**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUNE LANGLEY,<br><br>Plaintiff,<br><br>v.<br><br>JANET NAPOLITANO,<br><br>Defendant. | Civil Action No. 08-1580 (CKK) |

**MEMORANDUM OPINION**
(January 6, 2010)

Plaintiff, June Langley, filed the above-captioned lawsuit against her former employer, Defendant Janet Napolitano, Secretary of the Department of Homeland Security (the "Secretary").[1] Plaintiff, a former Management Analyst with the Department of Homeland Security (the "Department"), alleges that she was knowingly and intentionally subjected to disparate treatment and a hostile work environment based on race and color and unlawfully retaliated against based on protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Currently pending before the Court is the Secretary's partial Motion to Dismiss or in the Alternative for Summary Judgment, which focuses solely on Plaintiff's hostile work environment and reprisal claims.[2] The Secretary makes two principal arguments. First, the Secretary contends that Plaintiff's hostile work environment and reprisal claims should be dismissed under Fed. R.

---

[1] Secretary Napolitano is automatically substituted for Michael Chertoff, pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff's disparate treatment claim is not at issue in the pending motion.

Civ. P. 12(b)(6), or in the alternative, that judgment as a matter of law should be awarded to the Secretary under Fed. R. Civ. P. 56, because Plaintiff failed to administratively exhaust her remedies with respect to these claims. Second, the Secretary argues in the alternative that Plaintiff's reprisal and hostile work environment claims fail on their merits because (a) the conduct alleged is neither severe or pervasive, as is required to support a hostile work environment claim, and (b) Plaintiff has not established the required causal elements necessary to make out a reprisal claim. In response, Plaintiff acknowledges that she did not administratively exhaust her remedies with respect to her reprisal claim and therefore voluntarily withdraws that claim. Plaintiff, however, opposes the Secretary's motion with respect to her hostile work environment claim. Accordingly, as Plaintiff has voluntarily withdrawn her claim of reprisal, thereby rendering the Secretary's motion moot as to that issue, the only claim remaining in dispute is Plaintiff's hostile work environment claim.

The Secretary has styled her now-pending motion as a partial Motion to Dismiss or in the Alternative for Summary Judgment. As an initial matter, to the extent she moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the motion is more appropriately construed as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) because the Secretary has already filed an Answer to Plaintiff's Complaint, *see* Ans., Docket No. [9], and her motion to dismiss under Fed. R. Civ. P. 12(b)(6) is therefore untimely. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *see also Douglass v. District of Columbia*, 605 F. Supp. 2d 156, 161 (D.D.C. 2009). Nonetheless, as the standards for review are the same under either Fed. R. Civ. P. 12(b) or 12(c), courts routinely treat motions to dismiss that are filed after a responsive pleading has been made as a motion for

judgment on the pleadings. *Douglass*, 605 F. Supp. 2d at 161.

More importantly, however, the Court finds that the Secretary's motion should in fact be construed as a motion for summary judgment rather than a motion for judgment on the pleadings (or a motion to dismiss). In filing her motion, the Secretary attached various exhibits to her filing that both parties have relied upon in their briefing.[3] While some of the attached exhibits (specifically, Plaintiff's administrative complaint and amendment thereto) are referred to in the civil Complaint, others are not incorporated in or referenced by the Complaint and are therefore arguably outside the scope of the pleadings in this matter. Moreover, as the Secretary filed the motion as a motion for summary judgment in the alternative, both parties have submitted statements of material fact pursuant to LCvR 7(h) and Plaintiff has therefore had a reasonable opportunity to respond to the attached materials. The Court, in an abundance of caution, thus construes the Secretary's motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *see also Marshall Co. Health Care Auth. v. Shalala*, 998 F.2d 1221, 1226 n. 6 (D.C. Cir. 1993) (advising that it is "probably the better practice for a district court always to convert to summary judgment so as to avoid . . . question[s]" as to whether attached exhibits were properly considering in ruling upon a motion to

---

[3] The exhibits attached to the motion include Plaintiff's administrative complaint, a letter from Plaintiff amending her administrative complaint, agency correspondence regarding the investigation into Plaintiff's administrative complaint, Plaintiff's affidavit provided as part of the investigation below, and a transcript of Plaintiff's interview with the agency investigator. *See* Def.'s MSJ, Exs. A-G.

dismiss under Rule 12(b)(6)). Upon thorough consideration of the parties' submissions, the attachments thereto, the applicable case law, statutory authority, and the entire record of the case as a whole, the Court shall DENY the Secretary's [11] partial Motion for Summary Judgment. Specifically, the Secretary's motion is DENIED AS MOOT with respect to Plaintiff's reprisal claim, as Plaintiff has voluntarily withdrawn that claim, and is DENIED with respect to Plaintiff's hostile work environment claim, as Plaintiff has exhausted her administrative remedies and the Secretary has not shown that the claim must fail on the merits, for the reasons that follow.

## I. BACKGROUND

As indicated above, the Secretary, in setting forth the relevant background in her motion for summary judgment, has relied upon and cited to various exhibits drawn from the agency investigation into Plaintiff's Equal Employment Opportunity ("EEO") complaint. In so doing, the Secretary has in essence assumed the truth of Plaintiff's allegations — as set forth both in the administrative investigation below as well as in the civil Complaint — arguing that Plaintiff's hostile work environment claim fails even if Plaintiff's factual allegations are accepted as true. The Secretary has not submitted any contradictory evidence, but has instead referred only to Plaintiff's own unrebutted factual allegations. Accordingly, in summarizing the factual background relevant to the pending motion for summary judgment, the Court shall do the same.

### *A. Factual Background*

Plaintiff, an African American female, has worked for the Federal government for approximately 34 years, most recently as a GS-12 Management Analyst with the Facilities Management Branch, Resource Management Division of the Immigration and Customs

Enforcement within the Department from December 2004 through April 2006. Complaint, Docket No. [1], ¶¶ 3, 5; *see also* Def.'s MSJ, Docket No. [11], Ex. F (Plaintiff's EEO Affidavit) (hereinafter, "EEO Affidavit"), at p. 1.[4] While working as a Management Analyst with the Department, Plaintiff's immediate supervisor was Judith Duval, a Caucasian female. Compl., ¶ 5. In September of 2005, Plaintiff requested approval for advanced sick leave. Compl. ¶¶ 6-7; *see also* Def.'s MSJ, Ex. A (Plaintiff's EEO Complaint) (hereinafter, "EEO Complaint"), at p. 3. Although Duval, as Plaintiff's immediate supervisor, had always been responsible for approving Plaintiff's requests for leave, Duval refused to approve the request in this instance and instead forwarded the request to her own immediate supervisor, Gary Crevonis, a Caucasian male. *See* Def.'s Stmt. ¶ 8; *see also* EEO Compl. at p. 3; EEO Aff. at p. 2. Plaintiff did not agree with Duval's decision to forward her request for leave to Crevonis because he was new to the office and did not know Plaintiff. Compl. ¶ 6; EEO Aff. at p. 2. When Plaintiff asked Duval to explain to Crevonis the particular circumstances regarding Plaintiff's request for leave — specifically that Plaintiff had a negative sick leave balance because she had previously taken significant time off to care for her sick father and husband — Duval refused. Compl. ¶¶ 6, 7; EEO Compl. at p. 3; EEO Aff. at p. 2. Crevonis ultimately denied Plaintiff's request for advanced sick leave

---

[4] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h), which requires that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue," and that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." Although both parties filed the required statements, both statements are sparse and largely unhelpful to the Court in setting forth the required background. Accordingly, in most instances, the Court cites directly to the attached exhibits rather than to the Defendant's Statement of Material Facts ("Def.' Stmt.") or Plaintiff's Response to Defendant's Stmt. ("Pl.'s Resp. Stmt.").

because Plaintiff was in the negative sick leave category and had a large annual leave balance; he advised Plaintiff that she was required to use annual leave or take leave without pay. Def.'s Stmt. ¶ 9.

Plaintiff thereafter approached Duval to express her concerns regarding the decision to forward her request for leave to Crevonis. Duval became upset and told Plaintiff that she had asked Crevonis to transfer Plaintiff because Duval did not want to work with her. Compl. ¶ 8; EEO Compl. at p. 4. Duval also yelled at Plaintiff, told her that she did not care if Plaintiff filed a grievance, and attempted to slam the door in Plaintiff's face. Compl. ¶ 8; EEO Compl. at p. 4. When Plaintiff attempted to apologize to Duval the next week, Duval told Plaintiff that her behavior was inexcusable and that she was going to "file the fullest measure of retaliatory action against [Plaintiff]." EEO Compl. at p. 5. Duval also made false claims about what occurred, falsely accusing Plaintiff of "putting her hand on her hip and pointing at Duval, and being loud and abusive." Compl. ¶ 9. Plaintiff attempted to address this incident with management, including Crevonis, but no one responded. Compl. ¶ 9; EEO Aff. at p. 3. Ultimately, as a result of this incident, on September 13, 2005, Duval proposed Plaintiff be suspended for five days. *See* Def.'s Stmt. ¶ 11; *see also* Compl. ¶ 10; EEO Compl. at p. 5.

Shortly thereafter, on September 15, 2005, Plaintiff became ill at work and had to seek immediate medical attention. Compl. ¶ 11. Plaintiff's doctor advised her that her blood pressure was at a dangerously high level and that she could not return to work given her medical condition. *Id.*; EEO Compl. at p. 7. Plaintiff provided her doctor's statement to Duval. Compl. ¶ 11; EEO Compl. at p. 7. Plaintiff did not return to work after September 15, 2005, and used 240 hours of annual leave before being placed on leave without pay. Compl. ¶ 11.

On April 14, 2006, after being on leave for approximately seven months, Crevonis issued a letter to Plaintiff that: (1) terminated her leave without pay status effective April 16, 2006; (2) suspended her from pay and duty status for five calendar days effective April 17, 2006 (based on the previous proposed five-day suspension); and (3) directed her to report to work on April 24, 2006, after the conclusion of the five-day suspension, indicating that if she failed to do so, she would be considered absent without leave ("AWOL") and additional action may be taken, including removal from Federal service. Compl. ¶ 12; Def.'s MSJ, Ex. B (Plaintiff's Amendment to her EEO Complaint) (hereinafter, "EEO Amendment"). Plaintiff was still under her doctor's care at that time and had not been released to return to work. Compl. ¶ 12; EEO Amend. Despite Plaintiff's repeated efforts to contact Crevonis by email, fax, and telephone to inform him that she had not yet been released by her doctor and to find out what type of medical documentation was needed, he refused to communicate with Plaintiff. Compl. ¶ 12; EEO Amend.; EEO Aff. at pp. 7-8. As a consequence, Plaintiff "was forced to resign." EEO Aff. at p. 7; *see also* Compl. ¶ 13. As Plaintiff explains, she "felt that the only thing that [she] could do was resign . . . because if [Crevonis] totally ignored [her] doctor and [] put [her] on AWOL, then [she] assume[d] he would start action to fire [her]." EEO Aff. at p. 8.

According to Plaintiff, she was subjected to such treatment because she is African American. EEO Compl. at p. 6. In particular, Plaintiff asserts that other employees, and in particular, Caucasian employees, were absent from work for extended periods of time without having action taken against them by management. EEO Aff. at p. 9. In addition, Plaintiff contends that other employees did not have their doctor's advice ignored. *Id.* Plaintiff also asserts that during the relevant period of time, Duval provided preferential treatment to a

Caucasian co-worker, while treating Plaintiff and other African American employees in a hostile manner. Compl. ¶ 15; *see also* EEO Compl. at pp. 5-6.

*B. Procedural Background*

Plaintiff initially contacted an EEO counselor on September 14, 2005, and filed a formal complaint on February 1, 2006, which was subsequently amended on May 10, 2006. *See* Compl. ¶ 14; *see also* EEO Compl. at pp. 1, 2; EEO Amend. By letter dated April 14, 2006, the EEO accepted for investigation Plaintiff's allegations that she was discriminated against because of race and color based on management's decision on or around September 7, 2005 to deny her request for advanced sick leave. Def.'s Stmt. ¶ 15. The EEO subsequently amended the accepted issues to include discrimination because of race and color based on Plaintiff's allegations that: she had been issued a five-day suspension effective April 17, 2006; she was refused permission to continue on leave without pay, such that she would be charged with AWOL if she failed to return to work on April 24, 2006; and she had been forced to resign from her position on April 26, 2006. *Id.* ¶ 16.

As more than 180 days passed without final action by the Department, Plaintiff filed the above-captioned civil action on September 15, 2008. *See* Compl. Although Plaintiff's Complaint purports to contain only one count for an unspecified "Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a)," *see* Compl. ¶¶ 16-19, the parties all agree that Plaintiff has in fact asserted three distinct claims in this civil action: namely, claims for disparate treatment and a hostile work environment based upon race and color as well as a claim for reprisal based on protected EEO activity. *See* Def.'s. MSJ at 1; Pl.'s Opp'n at 1; *see also* Compl. ¶ 19 (alleging that "Defendant knowingly and intentionally subjected Ms. Langley to

disparate treatment, and a hostile work environment, and engaged in unlawful discrimination based on race and color, and reprisal"). Each of these claims in turn appears to be based upon the same factual allegations outlined above. Specifically, as set forth in Plaintiff's Complaint, she asserts that the following same events support each of her claims for disparate treatment, hostile work environment and reprisal:

> (1) on September 7, 2005, the Agency denied her request for advanced sick leave; (2) in September 2005, Duval proposed to suspend Ms. Langley for five days, and on April 14, 2006, Ms. Langley was suspended for five days; (3) on April 14, 2006, Ms. Langley was informed that she [*sic*] her absences would be considered discipline and charged as absent without leave, and if she failed to return to work on April 24, 2006, she could be terminated; and (4) the Agency constructively discharged Ms. Langley on April 26, 2006.

Compl. ¶ 19.

The Secretary subsequently filed the now-pending Motion to Dismiss or in the Alternative for Summary Judgment. *See* Def.'s MSJ, Docket No. [11]. Plaintiff filed a timely Opposition, *see* Pl.'s Opp'n, Docket No. [14], and the Secretary has since filed a Reply, *see* Def.'s Reply, Docket No. [15]. The parties' briefing is now complete, and the Secretary's motion for partial summary judgment is therefore ripe for review and resolution by the Court.

## II. LEGAL STANDARD

The Court construes the Secretary's motion as a motion for summary judgment. Pursuant to Fed. R. Civ. P. 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the

basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted). In this case, as the Secretary has assumed the truth of Plaintiff's allegations for purposes of the pending motion and has not introduced any contradictory or rebuttal evidence, there are no factual disputes.

## III. DISCUSSION

The Secretary advances two principal arguments as to why summary judgment is appropriate with respect to Plaintiff's hostile work environment claim, namely, that: (1) Plaintiff did not raise her hostile work environment claim during the administrative EEO proceedings and therefore has failed to exhaust her administrative remedies; and (2) the alleged conduct asserted in support of her hostile work environment claim, even if true, is neither sufficiently severe or pervasive, and Plaintiff's claim therefore fails on the merits as well. The Court shall address each argument in turn.

### *A. Plaintiff has Exhausted her Administrative Remedies*

It is well established that an individual complaining of alleged violations of Title VII must first exhaust his or her administrative remedies before proceeding to federal district court. *See Park v. Howard Univ.*, 71 F.3d 904, 906-07 (D.C. Cir. 1995). Furthermore, any civil action that follows an administrative complaint of discrimination is "limited in scope to claims that are

'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" *Id.* (quoting *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); *see also Na'im v. Rice*, 577 F. Supp. 2d 361, 369-70, 372 (D.D.C. 2008). In this case, the Secretary argues that Plaintiff's hostile work environment claim must fail because Plaintiff did not assert a hostile work environment claim in her administrative complaint nor did Plaintiff raise any such allegations during the course of the EEO investigation. Def.'s MSJ at 5-6. The Court does not agree.

To the contrary, it is apparent that Plaintiff did in fact sufficiently assert a hostile work environment claim in her EEO Complaint. First, in filing her formal complaint, Plaintiff indicated that she had been discriminated against because of race and color. EEO Compl. at p. 2. Second, Plaintiff specifically complained of being "subjected to [] constant harassment by Ms. Duval, which created both a hostile and stressful work environment." *Id.* at p. 6; *see also* EEO Aff. at p. 7 ("This became a very hostile working environment. . . ."). The D.C. Circuit has previously held that similar language in an administrative complaint sufficiently raised a hostile working environment claim for purposes of administrative exhaustion. *See Steele v. Schafer*, 535 F.3d 689, 694 (D.C. Cir. 2008) (rejecting argument that plaintiff had not asserted a hostile work environment claim in her complaint because the "complaint alleges 'discrimination,' which in principle includes a hostile work environment theory" and specifically included a request for "reassignment 'to a less hostile working environment'").

Furthermore, Plaintiff complained in her EEO Complaint of the very same conduct that she now asserts forms the basis of her hostile work environment claim in this lawsuit. *See generally* EEO Complaint. In addition, Plaintiff's EEO Complaint includes further detailed

allegations supporting her hostile work environment claim, including, for example, that Duval yelled at Plaintiff and made false accusations about her behavior; that Plaintiff "was under constant harassment from Ms. Duval;" and that Duval "constantly harass[ed] [Plaintiff] minute-by-minute" and made "unreasonable demands, hurling accusations and informing [her] of new stringent work schedules that she planned to impose only on [Plaintiff]." Accordingly, even if the Court were to find, contrary to its conclusion above, that Plaintiff had not specifically articulated a hostile work environment claim in her EEO Complaint, the Court would nonetheless conclude on this basis that Plaintiff's hostile work environment claim is "'like or reasonably related to the allegations'" in her EEO Complaint. *See Na'im*, 577 F. Supp. 2d at 372 ("Because the plaintiff need not specifically allege a hostile work environment claim, and because she supports her hostile work environment claim with factual allegations also contained in her . . . formal EEO complaint, the court concludes that she has adequately exhausted administrative remedies for the claim."). The Secretary's arguments to the contrary are without merit. In particular, the Secretary's reliance on the D.C. Circuit's decision in *Park* is misplaced, as the allegations in the EEO charge and the civil complaint in that case differed significantly from the allegations in the case at hand. *Park*, 71 F.3d at 907-08 (finding plaintiff had not administratively exhausted hostile work environment claim where the plaintiff's charge before the EEO did not include any reference to a "hostile work environment" and lacked "any factual allegations supporting such a claim"); *cf. Perry v. Clinton*, __ F. Supp. 2d __, Civ. Act. No. 08-1216, 2009 WL 4799290, *6 (D.D.C. Dec. 10, 2009) (observing that the "[c]ases in which claims have been deemed unrelated involve a much greater distinction between the allegations in the EEO complaint and those raised in federal court") (compiling cases). The Secretary's motion for

partial summary judgment is therefore DENIED to the extent she contends that Plaintiff failed to administratively exhaust her hostile work environment claim.

*B. The Secretary Has Not Shown that Plaintiff's Hostile Work Environment Claim Fails on the Merits*

The Secretary also asserts that summary judgment is appropriate with respect to Plaintiff's hostile work environment claim because the conduct alleged, even if true, is neither sufficiently severe or pervasive. "To establish hostile work environment claims under Title VII, . . . plaintiffs 'must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.''" *Steele*, 535 F.3d at 694 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004)). In this case, the Secretary urges that "there is a complete and utter lack of facts that could constitute a hostile work environment." Def.'s MSJ at 7. That is, the Secretary argues that Plaintiff's claims, even if "taken as true," do not "rise to the legal requirement that the harassment be severe and pervasive." *Id.*

Unfortunately for the Secretary, her argument is based upon a mischaracterization of Plaintiff's hostile work environment claim. As outlined above and as repeated by Plaintiff in her opposition briefing, Plaintiff's hostile work environment claim is based not only upon the events that occurred in September of 2005 (*i.e.,* allegations that her request for leave was denied, and that Duval yelled at her, attempted to slam the door in her face, made false accusations about her and ultimately proposed suspending Plaintiff for five days), but on the events that occurred in April of 2006 as well (*i.e.*, that her leave without pay status was terminated; that she was suspended for five days and told to report to work or she would be considered absent without leave; that her supervisors refused her repeated efforts to contact them to discuss her doctor's

report; and that Plaintiff was constructively discharged as a result). In other words, fairly read, Plaintiff's Complaint asserts that the alleged September 2005 and April 2006 events form parts of a whole and that her hostile work environment claim is based upon these cumulative incidents.

The Secretary, however, in arguing that Plaintiff's claim for a hostile work environment must fail, has characterized the claim as based only on the events that occurred in September of 2005 and has entirely ignored the April 2006 incidents that also form part of Plaintiff's hostile work environment claim. For example, in her opening memorandum, the Secretary argues that Plaintiff's hostile work environment claim "essentially levels only one allegation that Ms. Duval raised her voice at [Plaintiff], asked [Plaintiff] to leave her office, and allegedly attempted to slam a door in Plaintiff's face." Def.'s MSJ at 7. Although the Secretary slightly expands her characterization of Plaintiff's claim in her reply briefing — describing the claim as "essentially alleg[ing] that Ms. Duval yelled at her, attempted to slam a door in her face, proposed a five-day suspension for insubordination, and that her second level supervisor did not return her calls" — the Secretary at no point addresses the April 2006 allegations surrounding Plaintiff's alleged constructive discharge from work. *See* Def.'s Reply at 7. The Secretary's failure to do so is fatal to her pending motion.

"In determining whether an actionable hostile work environment claim exists, [courts] look to '***all the circumstances***,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (emphasis added). In this case, Plaintiff alleges a hostile work environment based on the alleged events occurring in both September

2005 and April 2006. Although Plaintiff was absent from work at all times after September 2005, the D.C. Circuit has rejected "a *per se* rule against considering incidents alleged to have occurred while an employee was physically absent from the workplace." *Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007). In so holding, the D.C. Circuit reasoned that, for example, "[w]hen an employee claims that her 'inability to return to work result from the [employer's] ill treatment of her,' . . . communications while on leave may form an essential part of a hostile environment claim." *Id.* (quoting *Jensen v. Henderson*, 315 F.3d 854, 861-62 (8th Cir. 2002)). A fair reading of Plaintiff's Complaint in this case suggests she has alleged just that — that the events in April 2006 were a continuation of the same hostile work environment she was allegedly subjected to in September 2005. Accordingly, in evaluating the merits of Plaintiff's claim, the Court must consider "all the circumstances" alleged, including those events occurring after Plaintiff took leave from the Department in September of 2005. As the Secretary has not addressed those allegations, focusing instead only on the portion of events that occurred before Plaintiff's absence from work, the Secretary has not demonstrated that she is entitled to summary judgment with respect to Plaintiff's hostile work environment claim.

The Court emphasizes that in so holding, it expresses no view as to the merits of Plaintiff's hostile work environment claim. The Secretary has failed to comprehensively address Plaintiff's hostile work environment claim, and it is not for the Court to advance arguments on behalf of the parties. Accordingly, whether Plaintiff is ultimately able to succeed on her claim is a question for another day. It is sufficient for the present purposes to note only that the Secretary has not demonstrated that Plaintiff's hostile work environment claim, as alleged in her Complaint, must fail. The Secretary's motion for partial summary judgment is therefore

DENIED to the extent she contends that she is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES the Secretary's [11] partial Motion for Summary Judgment. Specifically, the Secretary's motion is DENIED AS MOOT with respect to Plaintiff's reprisal claim, which Plaintiff has voluntarily withdrawn, and is DENIED with respect to Plaintiff's hostile work environment claim, as Plaintiff has exhausted her administrative remedies and the Secretary has not shown that Plaintiff's claim must fail on the merits. An appropriate Order accompanies this Memorandum Opinion.

Date: January 6, 2010

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge